UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
                                    )
LIMO GMBH,                          )
                                    )
            Plaintiff               )
                                    )
        v.                          )
                                    )    Case No. 24-cv-12838-DJC
                                    )
VULCANFORMS INC.,                   )
                                    )
            Defendant.              )
                                    )
                                    )
_____)

MEMORANDUM AND ORDER

CASPER, J.                                                    July 28, 2025

I.      Introduction

        Plaintiff LIMO GmbH ("LIMO") has filed this lawsuit against Defendant VulcanForms

Inc. ("VulcanForms") alleging breach of contract (Count I), breach of the implied covenant of

good faith and fair dealing (Count II), unjust enrichment (Count III), and seeking a declaratory

judgment (Count IV). D. 1-3. VulcanForms now has moved to dismiss the complaint for failure

to state a claim, D. 10. LIMO has moved to remand the matter to state court, D. 7. For the reasons

stated below, the Court DENIES LIMO's motion for remand, D. 7, and ALLOWS VulcanForms's

motion to dismiss, D. 10.

II.     Standard of Review

        A.      Motion for Remand

        Upon the filing of a motion to remand, the Court must assess whether it "would have had

original jurisdiction of the case had it been filed in [this] court" initially. BIW Deceived v. Loc.

1

S6, Indus. Union of Marine & Shipbuilding Workers of Am., IAMAW Dist. Lodge 4, 132 F.3d 824, 830 (1st Cir. 1997) (quoting Grubbs v. General Elec. Credit Corp., 405 U.S. 699, 702 (1972)). When a plaintiff files an action in state court and the defendant removes it here, the defendant has the burden of establishing that removal to the district court is proper. Danca v. Private Health Care Sys., Inc., 185 F.3d 1, 4 (1st Cir. 1999). The defendant "must therefore make a 'colorable' showing that a basis for federal jurisdiction exists." Id. (quoting BIW Deceived, 132 F.3d at 832).

      **B.**      **Motion to Dismiss**

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012). Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein. Id. Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit. Id. Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011)). In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

## III.   **Factual Background**

The following facts are based on the allegations in the complaint, which the Court takes as true for the purposes of resolving the motions. LIMO is a German company specializing in developing, commercializing, manufacturing, and selling laser and optics systems. D. 1-3 at 5 ¶

5.    VulcanForms is a Massachusetts-based corporation that develops, commercializes, manufactures, uses, leases, and sells additive manufacturing equipment.  Id. at 5-6 ¶¶ 2, 9.  On or around August 5, 2017, LIMO and VulcanForms entered into an agreement for a joint development program related to laser systems and "optionally opto-mechanical devices" for VulcanForms.  Id. at 6 ¶ 10.  Both LIMO and VulcanForms satisfied their respective development obligations under this agreement's Statement of Work and VulcanForms paid LIMO $460,000.  Id. ¶¶ 12-13.  The parties also executed an Amended and Restated Development Agreement ("Amended Agreement"), the contract at issue here, which was also effective as of August 5, 2017, to expand the parties' prior joint development program.  Id. ¶ 14; see id. at 19-44.

As outlined in Section 2(i) of the Amended Agreement, LIMO agreed not to enter into any relationship or collaborate with any third party in VulcanForms's "field of use."  Id. at 7 ¶ 17;  see id. at 23.  Pursuant to this "exclusivity" provision, in exchange for VulcanForms paying LIMO an amount equal to or more than $460,000, LIMO agreed not to "(a) sell or distribute any Technology or products that are similar to or compete with the Program Technology or [VulcanForms] products resulting therefrom, (b) sell or distribute any products resulting from the Development Program in the [VulcanForms] Field of Use, or (c) grant licenses for others to sell, distribute, or develop such Technology, for a minimum period of two years from May 23, 2018" until May 23, 2020.  Id. at 7-8 ¶¶ 18, 21; see id. at 23.  At the end of the initial two-year exclusivity period, VulcanForms "may" extend the exclusivity period for a total of nine years if it either "buys an increasing dollar amount of laser systems or other components, products, or services from LIMO or "pays an amount equal to the minimum profit expectation of LIMO."  Id. at 8 ¶ 22; see id. at 23-24.  Section 2(j)(ii) provided the annual Minimum Purchase and the Minimum Profit requirement per year and LIMO's exclusivity obligation would terminate "45

days after the end of any calendar year" if VulcanForms failed to meet the requirements. Id. at 8-9 ¶¶ 23-24; see id. at 23-24.

VulcanForms made purchase orders throughout the applicable year that satisfied the Minimum Purchase amount for Year 3 (May 23, 2020 – May 22, 2021). Id. at 9-10 ¶¶ 26, 29. As alleged, VulcanForms President and Chief Executive Officer Martin Feldmann ("Mr. Feldmann") stated in an April 26, 2022 letter that VulcanForms "intend[ed] to continue paying the Minimum Profit amount from Year 4 to Year 9 (May 23, 2027)" and that VulcanForms "shall satisfy its obligations for Minimum Profit payments by paying $350,000 on or before May 23, 2022." Id. at 10 ¶ 30. VulcanForms paid the Minimum Profit amount in Year 4 (May 23, 2021 – May 22, 2022) and Year 5 (May 23, 2022 – May 22, 2023). Id. at 9-10 ¶¶ 26, 31-32. For Year 6 (May 23, 2023 – May 22, 2024), VulcanForms did not pay either the Minimum Purchase or the Minimum Profit amounts during the exclusivity period. Id. at 10 ¶ 33. In a June 26, 2024 letter, VulcanForms notified LIMO of its intent to terminate the exclusivity period pursuant to Section 2(j) of the Amended Agreement after LIMO had complied with the exclusivity provision for Year 6 (May 23, 2023 – May 22, 2024), noting that "exclusivity obligations will terminate 45 days after the end of this calendar year, or February 14, 2025." Id. at 11 ¶¶ 34-35. As alleged, LIMO complied with the exclusivity provision of the Amended Agreement from Year 1 through Year 6, continues to comply with the provision and expected to comply until February 14, 2025. Id. at 12 ¶ 40. On or about July 12, 2024, Focuslight Technologies Inc., LIMO's parent company, sent a demand letter to Mr. Feldmann, demanding $700,000 for the Minimum Profit corresponding with Year 6 in the Amended Agreement. Id. ¶ 43; see id. at 5 ¶ 6. VulcanForms responded to the demand letter and refused to pay the Minimum Profit amount. Id. at 13 ¶ 44.

**IV.     Procedural History**

LIMO instituted this action in Middlesex Superior Court on October 28, 2024.  D. 1-3 at 4-44.  VulcanForms removed the matter to this Court on November 13, 2024.  D. 1.  LIMO now has moved to remand to state court, D. 7, and VulcanForms has moved to dismiss, D. 10.  The Court heard the parties on the pending motions and took these matters under advisement.  D. 21-22.

**V.     Discussion**

**A.     <u>Motion for Remand</u>**

VulcanForms removed this case here asserting diversity jurisdiction.  D. 1; 28 U.S.C. §§ 1332(a), 1441.  LIMO does not dispute that there is complete diversity in citizenship between the parties and that the amount in controversy exceeding $75,000 has been meet.  <u>See</u> D. 8 at 1-2; D. 1-3 at 4 ¶¶ 1-2, 16 ¶ 71.  Instead, LIMO argues that VulcanForms waived its right to remove the case here in the Amended Agreement, which contains a forum selection clause, D. 8-1 at 15-16; D. 15-2 at 15-16.  D. 8 at 2-5.  Paragraph 15(a) of the Amended Agreement provides that "[t]he Parties hereby irrevocably submit to the exclusive jurisdiction of the federal and state courts located in Middlesex County, Massachusetts for the resolution of any claim under this Agreement."  D. 8-1 at 15-16; D. 15-2 at 15-16.  The parties do not dispute that the Amended Agreement is valid and enforceable or that the forum selection clause contained therein is valid. VulcanForms, however, disputes that it waived its right to remove the case and argues that because the forum selection clause expressly references "federal and state courts located in Middlesex County, Massachusetts," D. 8-1 at 15-16; D. 15-2 at 15-16, the fact that a federal court is not located within Middlesex County cannot render that contractual reference meaningless.  D. 15 at 5-7.

5

"It is well established that forum selection clauses 'are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 18 (1st Cir. 2009) (quoting M/S Bremen v. Zapata Off–Shore Co., 407 U.S. 1, 10 (1972)).  The language of a forum selection clause itself indicates whether the clause is mandatory or permissive and "whether the claims at issue fall within" its scope.  Atlas Glass & Mirror, Inc. v. Tri-North Builders, Inc., 997 F.3d 367, 374-75 (1st Cir. 2021); see Provanzano v. Parker View Farm, Inc., 827 F. Supp. 2d 53, 59 (D. Mass. 2011) (noting that "[w]hen a defense based upon a forum selection clause is properly before the Court, a threshold question is whether the clause is permissive or mandatory").  Courts in this Circuit have found no waiver of the right to remove where parties have not "manifest[ed] a clear and unequivocal intent to adjudicate in state court."  Cummings Prop., LLC v. Prod. Resource Grp., LLC, 532 F. Supp. 3d 24, 27 (D. Mass. 2021) (holding defendant did not waive right to remove where defendant did not litigate the merits of the case by filing an answer, serving discovery requests and moving to transfer to another state court before removing the action to federal court); Bisasor v. Donais, No. 23-cv-374-JL-TSM, 2024 WL 2263079, at *7 (D.N.H. Mar. 21, 2024) (noting the clear and unequivocal intent standard and rejecting argument that defendants waived right to remove by participating in the suit in state court); see OsComp Systems, Inc. v. Bakken Exp., LLC, 930 F. Supp. 2d 261, 269 (D. Mass. 2013) (noting that the First Circuit has not ruled on whether waiver of removal must meet the "clear and unequivocal standard or just "basic contract principles" but observing that "the question of waiver appears to depend more on the particular language used in the forum selection clause than on the standard applied by the court").

The forum selection clause at issue does not show a clear and unequivocal intent by parties to litigate in state court where the plain language references federal court.  See D. 8-1 at 15-16;

D. 15-2 at 15-16.  Even applying basic contract principles, reading the forum selection clause in the light most favorable to LIMO, and considering the various references to Middlesex County, the clause is at least ambiguous as to that intent by referencing federal courts where none are located in Middlesex County, Massachusetts and, therefore, does not constitute a waiver of VulcanForms's right to remove the case here.  In OsComp, a different session of this Court analyzed the parties' forum selection clause and concluded that because the defendant had not waived its right to remove the case based on diversity jurisdiction "under the less stringent contract interpretation standard," there was no waiver under either standard.  OsComp, 930 F. Supp. 2d at 269.  Oscomp is instructive.  There, like here, the plaintiff did not dispute that the requirements for establishing diversity jurisdiction had been met and argued that the defendant waived its right to remove by "agreeing to 'accept venue in the courts of Middlesex County, Massachusetts' where no federal court sits."  Id. at 267.  The defendant argued that the language in the clause was permissive and that, as VulcanForms argues here, it was "appropriate for the case to be heard here, in the federal district court which encompasses Middlesex County."  Id. at 268.  The Court ultimately held the permissive clause did not exclude jurisdiction in other courts, that the defendant had not waived its right to remove it to this Court and that the same result would have been reached if the clause was deemed ambiguous.  Id. at 271-73.  As in OsComp, the provision here is permissive, not mandatory.  Id. at 271 (noting that the "First Circuit has determined that a forum selection clause under which the parties 'agree to submit to the jurisdiction of the courts' of given forum is permissive").  Accordingly, the Court DENIES LIMO's motion for remand, D. 7.

Given this ruling denying remand, the Court also DENIES LIMO's request for attorneys' fees, costs and expenses incurred due to VulcanForms's removal of this action pursuant to 28 U.S.C. § 1447(c).  D. 8 at 2, 6.

**B.**     **Motion to Dismiss**

*1.     Breach of Contract (Count I)*

To succeed on a breach of contract claim under Massachusetts law, a plaintiff must "show that (1) a valid contract between the parties existed, (2) the plaintiff was ready, willing, and able to perform, (3) the defendant was in breach of the contract, and (4) the plaintiff sustained damages as a result." Bose Corp. v. Ejaz, 732 F.3d 17, 21 (1st Cir. 2013). "Interpretation of an unambiguous contract is a matter of law and may, therefore, be done at the motion to dismiss stage." Ruiz v. Bally Total Fitness Holding Corp., 447 F. Supp. 2d 23, 28 (D. Mass. 2006), aff'd, 496 F.3d 1 (1st Cir. 2007). The Court must interpret contracts "as a whole," with attention to "the context of its creation," id. (citation omitted), and "[c]ontracts containing unambiguous language must be construed according to their plain and natural meaning," Smart v. Gillette Co. Long-Term Disability Plan, 70 F.3d 173, 178 (1st Cir. 1995). "Courts may examine a contract's terms at the motion to dismiss stage to determine if the plain terms of the contract contradict a plaintiff's allegations." Penney v. Deutsche Bank Nat'l Trust Co., No. 16-cv-10482, 2017 WL 1015002, at *4 (D. Mass. March 15, 2017); see Clorox Co. P.R. v. Proctor & Gamble Commercial Co., 228 F.3d 24, 32 (1st Cir. 2000). Finally, "[a] contract is not ambiguous simply because litigants disagree about its proper interpretation." Weiss v. DHL Express, Inc., 718 F.3d 39, 45 (1st Cir. 2013) (quoting FDIC v. Singh, 977 F.2d 18, 22 (1st Cir. 1992)). Rather, "[c]ontract language is ambiguous 'where the phraseology can support a reasonable difference of opinion as to the meaning of the words employed and the obligations undertaken.'" Bank v. Thermo Elemental Inc., 451 Mass. 638, 648 (2008) (internal citation omitted).

LIMO alleges that pursuant to the parties' Amended Agreement, it complied with its exclusivity obligations, continued to perform under the Amended Agreement and did not receive

compensation from VulcanForms for that benefit.  D. 1-3 at 13 ¶¶ 50-53.  LIMO specifically alleges that VulcanForms breached the Amended Agreement by failing to pay the Minimum Purchase amount, Minimum Profit amount or the difference between those amounts for the sixth contract year ("Year 6") as it had done in prior years, leading LIMO to suffer damages in the form of lost contractual benefits and lost businesses during the period when it maintained their exclusivity obligations.  Id. ¶¶ 53-54; see D. 18 at 8-14.  VulcanForms contends, however, that the terms of the Amended Agreement, particulary Section 2(j), are unambiguous and did not require VulcanForms to make a payment for exclusivity in Year 6 or any subsequent year.  D. 11 at 5, 9-11.

Section 2(j) of the Amended Agreement establishes that the initial two-year period of exclusivity, based on VulcanForms's prior payment of $460,000 to LIMO, "may be extended over subsequent years, up to a total of nine years if either: (i) . . . [VulcanForms] buys an increasing dollar amount of laser systems or other components, products, or services from LIMO" or "(ii) [VulcanForms] pays an amount equal to the minimum profit expectation of LIMO."  D. 1-3 at 23-24.  LIMO cannot, and does not, contend that VulcanForms was required to extend the exclusivity on a yearly basis after the initial two-year exclusivity period where the plain language of the provision explicitly states that exclusivity "may be extended . . . if" VulcanForms made the Minimum Purchase or paid the Minimum Profit amount.  See D. 18 at 9 (acknowledging that "the *extensions* of Exclusivity may be permissive") (emphasis in original); see Liberty Mutual v. Greenwich Ins., 417 F.3d 193, 197 & n.3 (1st Cir. 2005) (noting that "[u]nder both case law and general usage, the term 'may' indicates something that is permissive"); see also Lanza v. Fin. Indust. Regulatory Authority, 953 F.3d 159, 165 (1st Cir. 2020) (noting that "at any rate, the word 'may' is permissive, not mandatory").  That is, the parties' use of this permissive language

conditioned any extension of exclusivity on VulcanForms first exercising its option to extend by making the Minimum Purchase or paying the Minimum Payment amount for a given year.[1] See Santana-Colon v. Houghton Mifflin Harcourt Pub. Co., 81 F. Supp. 3d 129, 138 (D.P.R. 2014) (explaining that "[a] condition precedent defines an event which must occur before an obligation to perform arises under a contract") (citing Sands v. Ridefilm Corp., 212 F.3d 657, 661-62 (1st Cir. 2000)).  LIMO, however, asserts that "the *bargained for exchange* of each completed year of Exclusivity" was not permissive and that "the parties agreed that each year of Exclusivity is conditioned on agreed-upon compensation by [VulcanForms] to LIMO." D. 18 at 9 (emphasis in original).    LIMO's interpretation distorts the parties' agreed-upon bargain that it was VulcanForms's payment that would prompt an extension of LIMO's exclusivity-related obligations, not vice versa.

Here, the clear and unambiguous language of the Amended Agreement's exclusivity provision indicates that VulcanForms's declination to extend exclusivity (i.e., by making a purchase or payment) by an ascertainable date (i.e., before "the end of any calendar year") would result in the termination of LIMO's obligations without any additional action or notice requirement by VulcanForms or LIMO 45 days thereafter.[2]  See D. 1-3 at 24.  LIMO suggests that it is "contrary to the benefit of the bargain," D. 18 at 12, that VulcanForms was able to obtain exclusivity for

---

[1]  The exclusivity provision further states that "[b]y way of example in year 4, [VulcanForms] could maintain Exclusivity by 1) placing purchase orders within an aggregate value of $1,000,000, 2) pay LIMO $350,000 directly, or 3) order an amount of goods and services from LIMO in the amount of $100,000, for example ($35,000 of which would be subtracted from the Minimum Profit owed for such year), and pay LIMO the $315,000 difference." D. 1-3 at 24. This example further illustrates that the parties contemplated the possibility of exclusivity extensions contingent upon VulcanForms's choice.

[2]  No provisions in the Amended Agreement required VulcanForms to provide notice of its intent to extend or not extend exclusivity.  See D. 1-3 at 22-24, 29-30, 32.

Year 6 and part of Year 7 without compensating LIMO, but the parties negotiated the Amended Agreement that established the timeline and conditions for the termination of LIMO's exclusivity obligations.  To maintain exclusivity for Year 6, VulcanForms had until the end of the 2024 calendar year, or December 31, 2024, to make the Minimum Purchase ($2,000,000) or pay the Minimum Profit ($700,000).  See D. 1-3 at 24, 49.  VulcanForms otherwise was not required to extend exclusivity to a sixth year.  Per the exclusivity provision, that meant LIMO's exclusivity obligations for Year 6 terminated on February 14, 2025, which is the ascertainable date of 45 days after December 31, 2024.  See Id. at 24.  The Court will not rewrite the parties' bargained-for contract to require VulcanForms to pay for exclusivity when it stopped undertaking extension-triggering activities under the terms of the Amended Agreement.  See Freelander, 357 Mass. at 516 (observing that where there is "nothing ambiguous in this [contract] language," "the court cannot subvert its plain meaning"); see also Guldseth v. Family Medicine Assocs. LLC, 45 F. 4th 526, 539 (1st Cir. 2022) (noting that "a written agreement made from an arm's-length deal can't be undone just because one party later claims [it] thought the deal was something other than what the signed contract reduced to ink").

LIMO insists, however, that although the exclusivity provision does not address the past exclusivity obligations it fulfilled (i.e., for Year 6), the parties did not intend to limit LIMO's remedies and recovery of damages to past obligations.  D. 18 at 9-10.  Specifically, LIMO notes the absence of words like "sole and exclusive remedy" in the exclusivity provision and points to Sections 14(c) and 16(d) of the Amended Agreement.[3]  Id. at 10 & n.1, 11.  LIMO argues that the

---

[3] LIMO contends that paragraph 2(j)(ii) of the exclusivity provision could be construed as a liquidated damages clause.  See D. 18 at 10 n.1.   "[A] contract provision that clearly and reasonably establishes liquidated damages should be enforced, so long as it is not so disproportionate to anticipated damages as to constitute a penalty."   TAL Fin. Corp. v. CSC Consulting, Inc., 446 Mass. 422, 431 (2006).  "Failing to provide any recognition for the type, or

parties are obligated to continue complying with the exclusivity provision by relying upon Section 14(c), which states that the exclusivity provision and other provisions survive the expiration or termination of the Amended Agreement.  D. 18 at 10-11.  While it is the case that "all rights and duties of the Parties toward each other" under the exclusivity provision survive expiration or termination, see D. 1-3 at 32, the language in this section does not expand LIMO's rights to compensation beyond those outlined in the exclusivity provision.  LIMO's reliance upon Section 16(d) is equally unavailing.  Section 16(d) establishes that remedies under the Amended Agreement are cumulative and that parties "shall be entitled to seek any and all remedies available to it at law or in equity."  D. 1-3 at 34.  Contrary to LIMO's assertions, this section together with Section 14(c) does not "demonstrate that the Agreement expressly provided that LIMO could bring this action for breach of contract to the extent VF failed to compensate LIMO for past Exclusivity obligations under the Agreement."  See D. 18 at 11; see also D. 1-3 at 32, 34.  None of the provisions in the Amended Agreement established that VulcanForms's failure to inform LIMO of

---

timing, of the default, while by no means determinative, tends to indicate that the provision's intended purpose was not to estimate the different types of damages that might arise from a future default, but to penalize for any failure, however immaterial." Id. at 432. Here, however, paragraph 2(j)(ii) of the exclusivity provision does not signal LIMO's "entitlement to an additional remedy [] beyond the standard damages theories for breach of contract" or include language akin to the clause at issue in Sullivan, a case LIMO relies upon. Sullivan v. Kahn, Litwin, Renza & Co. Ltd., No. SU-cv-1402614-BLS1, 2016 WL 6908358, at *1-2 (Mass. Super. Sept. 15, 2016). In Sullivan, the court determined it was ambiguous whether the disputed provision was a liquidated damages provision given its placement in a section titled "Other Remedies" between "two other clauses detailing supplementary entitlements for both parties in the event of litigation" and that it could reasonably be read to provide "a specific measure of damages for a breach (violation of non-solicitation obligation) for which actual damages would be hard to measure." Id. at *2. Such is not the case here. In Carroll, upon which LIMO also relies, there was no dispute that the defendant had breached the contract or that the contract regarding a real estate transaction contained an explicit liquidated damages clause. Carroll v. Barberry Homes, Inc., No. 976418, 1999 WL 1204020, at *3 (Mass. Super. Oct. 22, 1999). Even considering the case law cited by LIMO, the Court is not persuaded that the exclusivity provision in dispute here constitutes a liquidated damages provision.

its intent not to extend exclusivity during the exclusivity year or before the end of the calendar year would constitute a breach.  See D. 1-3 at 19-36.  The Court is not persuaded to adopt LIMO's interpretation of Sections 14(c) and 16(d) as it purports to expand VulcanForms's obligations beyond those outlined in unambiguous terms in Section 2(j) of the Amended Agreement and would render the language in the exclusivity provision meaningless.  See Summit Packaging Sys., Inc. v. Kenyon & Kenyon, 273 F.3d 9, 12 (1st Cir. 2001) (noting that it is a "basic principle of contract law that constructions that render contract terms meaningless should be avoided").

LIMO argues, alternatively, that the "absence of a specific date [for VulcanForms] to satisfy the Minimum Purchase or Minimum Profit amounts under the [Amended] Agreement renders the payment obligation ambiguous" and, therefore, the Court can look to the parties' course of conduct and consider parol evidence.  D. 18 at 12.  "Under Massachusetts contract law, 'extrinsic evidence may be used as an interpretive guide only after the judge or the court determines that the contract is ambiguous on its face or as applied.'"  Alicea v. Machete Music, 744 F.3d 773, 786 (1st Cir. 2014) (quoting Thermo Elemental Inc., 451 Mass. at 648); see Skinner, Inc. v. Li, No. 20-cv-11402-MPK, 2022 WL 715710, at *5 (D. Mass. March 10, 2022).  Accordingly, "under Massachusetts law, parol evidence will not be admitted to create ambiguity in a contract where none exists."  ITT Corp. v. LTX Corp., 926 F.2d 1258, 1261 (1st Cir. 1991); cf. Dahua Tech. USA, Inc. v. Zhang, 138 F.4th 1, 14 n.5 (1st Cir. 2025) (considering background facts of contract formation "pursuant to the Massachusetts version of the parol evidence rule, under which a court may look to limited extrinsic evidence to find ambiguity before concluding that a contract is facially ambiguous").  As discussed above, the unambiguous language in the exclusivity provision provides a deadline on an ascertainable date, "the end of any calendar year," D. 1-3 at 24, by which VulcanForms needed to satisfy the Minimum Purchase or Minimum Profit amount to avoid

triggering the termination of LIMO's exclusivity obligations 45 days later.  See Targus Grp. Int'l, Inc. v. Sherman, 76 Mass. App. Ct. 421, 431 (2010) (noting that "[a]mbiguous or indeterminate material terms can render an attempted agreement too uncertain for enforcement[,]" but "the law does not demand impracticable precision from contracting parties" and if parties "identify present unknowns or subsequent contingencies and provide mechanisms or norms for their accommodation, their agreement is binding").  Also, the Amended Agreement includes an integration clause, see D. 1-3 at 34 (§16(g)), which is "a clear signal of the parties' intentions to have the written contract represent the entirety of their bargain."  Arsenault v. One Call Logistics, LLC, No. 24-cv-00022-JAW, 2024 WL 4134845, at *9 (D. Me. Sept. 10, 2024) (noting that "[i]f a contract is integrated, evidence offered to alter unambiguous language will be excluded by the [parol evidence] rule") (internal citation and quotation marks omitted).  Because the Amended Agreement is unambiguous, the resort to the parties' course of conduct or other extrinsic evidence is not warranted.

For all these reasons, the Court concludes that LIMO has not plausibly alleged that VulcanForms breached the Amended Agreement.  Accordingly, the Court ALLOWS VulcanForms's motion to dismiss, D. 10, with respect to Count I.

> 2.    *Breach of the Implied Covenant of Good Faith and Fair Dealing (Count II)*

VulcanForms also moves to dismiss Count II, LIMO's claim for breach of the implied covenant of good faith and fair dealing.  D. 10 at 2; see D. 11 at 13.  LIMO alleges that it "reasonably expected that [VulcanForms] would compensate LIMO for each year the [e]xclusivity provision was in effect" and that VulcanForms breached the implied covenant of good faith and fair dealing by notifying LIMO of its intent to terminate the exclusivity provision after LIMO had complied with its exclusivity obligations in Year 6, thereby acting contrary to the April 2022 letter

14

in which VulcanForms stated its intent to extend exclusivity until 2027.  D. 1-3 at 14-15 ¶¶ 57, 60-62; see D. 18 at 14-15.  LIMO contends VulcanForms received the benefits of two years of exclusivity without compensating LIMO.  D. 1-3 at 14-15 ¶ 61.

Under Massachusetts law, "[t]he covenant of good faith and fair dealing is implied in every contract."  Uno Rests., Inc. v. Bos. Kenmore Realty Corp., 441 Mass. 376, 385 (2004).  The covenant provides that "neither party shall do anything that will have the effect of destroying or injuring the right of the other party to the fruits of the contract."  Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451 (1991).  However, "[t]he implied covenant may not be invoked to create rights and duties not contemplated by the provisions of the contract or the contractual relationship."  Doe v. Brandeis Univ., 177 F. Supp. 3d 561, 612 (D. Mass. 2016); Lanza, 953 F.3d at 165 (noting that the scope of the covenant "is only as broad as the contract that governs the particular relationship") (internal citation and quotation marks omitted).  In determining whether the covenant of good faith and fair dealing was breached, courts use the same analysis as in a breach of contract and look to the reasonable expectations of the parties.  Doe, 177 F. Supp. 3d at 612.  "Establishing a violation of the implied covenant further requires proof of 'at least bad faith conduct.'"  Kestenbaum v. President & Fellows of Harvard Coll., No. 24-cv-10092-RGS, 2024 WL 3658793, at *8 (D. Mass. Aug. 6, 2024) (quoting Sonoran Scanners, Inc., 585 F.3d 535, 541 (1st Cir. 2009).

Here, even as alleged, LIMO's claim is premised on the argument that the Amended Agreement required VulcanForms to compensate LIMO so long as LIMO maintained exclusivity and regardless of whether VulcanForms took any of the triggering actions stipulated in the Amended Agreement to extend such exclusivity.  As addressed above, the Amended Agreement neither required VulcanForms to extend exclusivity in the first place nor did it require

VulcanForms to provide any notice of its intent to extend or terminate exclusivity.  See D. 1-3 at 22-24, 29-30, 32.  While VulcanForms's letters to LIMO provided updates of VulcanForms's intent, VulcanForms nonetheless followed the terms of the Amended Agreement when it sought to extend exclusivity by making the Minimum Purchase or paying the Minimum Profit amount for Years 3 through 5.  See D. 1-3 at 9-10 ¶¶ 26, 29, 31-32.  Even if VulcanForms noted in the April 26, 2022 letter that it "intend[ed] to continue paying the Minimum Profit amount" until Year 9 and that it "shall satisfy its obligations for Minimum Profit payments" for Year 4, that was a statement of intent and the letter also invokes the Section 2(j) of the Amended Agreement that provides for termination of exclusivity 45 days after the end of the year in VulcanForms fails to make these payments.  D. 1-3 at 47.  Similarly, with respect to the June 26, 2024 letter advising LIMO of its intent not continue the exclusivity period, id. at 49, VulcanForms had until the end of the calendar year to decide whether to make the payments to extend exclusivity, see id. at 24, so the timing of that letter cannot be said to constitute bad faith.  See Christensen v. Kingston Sch. Comm., 360 F. Supp. 2d 212, 226 (D. Mass. 2005) (noting "[bad faith] generally involve[s] deceit or unfair subterfuge and usually [is] compounded by deceptive or unfair behavior that prevented-or at a minimum diverted-the injured parties from seeking immediate redress") (internal citation and quotation marks omitted).  As VulcanForms asserted at the motion hearing, D. 22 at 24, VulcanForms gave consideration and bargained for the structure of the Amended Agreement that allowed for optional extensions of the initial exclusivity period, for which it paid $460,000, and for a cooling-off period for LIMO before it could commercialize the technology funded by VulcanForms.  See D. 1-3 at 23 ¶ 2 (j); Young v. Wells Fargo Bank, N. A., 717 F.3d 224, 239 (1st Cir. 2013) (affirming the dismissal of plaintiff's implied covenant claim complaint because it

"fail[ed] to plead that defendants' behavior was motivated by a desire to gain an unfair advantage or had the effect of injuring her ability to obtain the contract's fruits").

LIMO has not plausibly alleged a claim based on a breach of the implied covenant of good faith and fair dealing.  Accordingly, the Court ALLOWS VulcanForms's motion to dismiss, D. 10, with respect to Count II.

### 3.    Unjust Enrichment (Count III)

VulcanForms moves to dismiss LIMO's claim of unjust enrichment because there is no dispute that the issue of exclusivity payments is governed by a valid and enforceable contract.  D. 11 at 13.  "[U]njust enrichment is defined as retention of money or property of another against the fundamental principles of justice or equity and good conscience."  Doe v. Tenet Healthcare Corp., 731 F. Supp. 3d 142, 151 (D. Mass. Apr. 23, 2024) (quoting Sacks v. Dissinger, 488 Mass. 780, 789 (2021).  Under Massachusetts law, a plaintiff "must show (1) a benefit conferred upon defendant by plaintiff, (2) an appreciation or knowledge by defendant of the benefit, and (3) that acceptance or retention of the benefit under the circumstances would be inequitable without payment for its value."  Infinity Fluids Corp. v. Gen. Dynamics Land Sys., Inc., 210 F. Supp. 3d 294, 309 (D. Mass. 2016).

However, a "party with an adequate remedy at law cannot claim unjust enrichment."  Tomasella v. Nestlé USA, Inc., 962 F.3d 60, 82 (1st Cir. 2020) (quoting Shaulis v. Nordstrom, Inc., 865 F.3d 1, 16 (1st Cir. 2017)).  This inquiry turns on "the availability of a remedy at law, not the viability of that remedy."  Id. at 82-83 (quoting Shaulis, 865 F.3d at 16).  Where, as here, the parties' obligations are governed by a contract and LIMO has an adequate remedy available at law through its breach of contract claim, an unjust enrichment claim fails.  See Reed v. Zipcar, Inc., 527 F. App'x 20, 24 (1st Cir. 2013) (explaining that neither unjust enrichment nor

money had and received "can trump the plain terms of [a] contract willingly entered by both parties"); Platten v. HG Bermuda Exempted Ltd., 437 F.3d 118, 130 (1st Cir. 2006) (noting that "Massachusetts law does not allow litigants to override an express contract by arguing unjust enrichment").

Accordingly, the Court ALLOWS VulcanForms's motion to dismiss, D. 10, as to Count III.

### 4.    *Declaratory Judgment (Count IV)*

LIMO seeks a declaratory judgment that VulcanForms breached the exclusivity provision of the Amended Agreement and is contractually obligated to pay $700,000 for the Minimum Profit amount, that it breached the implied covenant of good faith and fair dealing "by injuring the rights and reasonable expectations of LIMO," and that VulcanForms has been unjustly enriched due to its failure to compensate LIMO.  D. 1-3 at 16 ¶ 71.  LIMO contends VulcanForms did not move to dismiss Count IV and, therefore, the claim should remain.  D. 18 at 16 n.4; D. 22 at 21.  At the motion hearing, VulcanForms argued that because LIMO seeks a declaratory judgment based on its interpretation of the Amended Agreement in its breach of contract claim, and VulcanForms has moved to dismiss all other claims, VulcanForms's motion to dismiss, D. 10, includes the declaratory judgment claim.  D. 22 at 25.

At any rate, it is within this Court's discretion whether Claim IV is at issue with respect to the present motion to dismiss.  The Declaratory Judgment Act grants courts discretion to "declare the rights and other legal relations of any interested party . . . but only in [ ] case[s] of actual controvers[ies] within that court's jurisdiction." In re Fin. Oversight & Mgmt. Bd. For P.R., 916 F.3d 98, 110 (1st Cir. 2019) (internal quotation marks omitted) (quoting 28 U.S.C. § 2201(a)).  In light of "the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial."

<u>Wilton</u>, 515 U.S. at 288.  Here, where LIMO's claims for breach of contract, breach of implied covenant of good faith and fair dealing and unjust enrichment claims fail, the Court cannot grant the declaratory judgment that LIMO seeks.

A claim for declaratory judgment "is properly brought when the plaintiff demonstrates that an actual controversy exists, that the plaintiff has legal standing to sue, and that all necessary parties have been joined." <u>Frederic v. Mass. Comm'n Against Discrimination</u>, No. 20-P-809, 2021 WL 2742589, *2 (Mass. App. Ct. July 1, 2021) (citing <u>Buffalo-Water 1, LLC v. Fidelity Real Estate Company, LLC</u>, 481 Mass 13, 18 (2018)).  "Where the claim is 'properly brought,' . . . the judge must proceed to the second step:  determining whether the facts alleged by the plaintiff in the complaint, if true, state a claim for declaratory relief that can survive a defendant's motion to dismiss." <u>Buffalo-Water 1, LLC</u>, 481 Mass. at 18. Here, LIMO's declaratory judgment claim fails on this second step.  Where, for the reasons stated above, the Court concludes that LIMO's underlying claims shall be dismissed for failure to state a claim under Rule 12(b)(6), dismissal of LIMO's claim for declaratory judgment is likewise warranted.  <u>Id.</u> at 20.

**VI.    Conclusion**

For the foregoing reasons, the Court DENIES LIMO's motion for remand, D. 7, and ALLOWS VulcanForms's motion to dismiss as to the complaint in its entirety, D. 10.

**So Ordered.**

/s Denise J. Casper
United States District Judge
